Weygandt, C. J.
The controlling facts are not in dispute, and counsel have submitted the matter on an agreed summary of the voluminous evidence.
In the order of citation it is charged that on July 2Q and 21, 1951, the appellant wrongfully and illegally operated under its certificate in the following eight respects:
“(1) Permitted James Sirbello, Court Street road and Tower avenue, Syracuse, New York, to operate a tractor-trailer unit, as a trip lease operator under its P. U. C. O. certificate No. 499, upon and over the highways of the state of Ohio without first paying to the commission the taxes described in Section 614-94, General Code;
“(2) Failed to comply with the provisions of the commission’s administrative order No. 135 requiring that a proper Ohio tax decal for the current year be attached to the windshield of the tractor operated by the said James Sirbello, under certificate No. 499;
“(3) Permitted said James Sirbello to operate a commercial motor vehicle upon the public streets and highways of the state of Ohio for the purpose of transporting property from Cleveland, Ohio, to Hamilton, Ohio, without first complying with the laws of Ohio in procuring Ohio license plates for said motor vehicle, being a violation of Sections 6291, 6291-1 and 6292, General Code of Ohio ;
“(4) Permitted said James Sirbello to operate a loaded motor vehicle upon the public streets and highways of the state of Ohio weighing in excess of the weights described in Section 7246, 7248 and 7248-1, General Code of Ohio;
“ (5) Dworkin, Inc., the citee herein, had full knowledge through its agent that said James Sirbello was dispatched with a vehicle and cargo weighing in excess of the limits prescribed by statutes of Ohio for reason this vehicle operator, after loading at the plant of *176 Fisher Body Company in Cleveland, Ohio, a shipment of 73,990 pounds of steel plus approximately 360 pounds of dunnage, on Friday, July 20, 1951, was required to move his loaded vehicle to the yard of Dworkin, Inc., to pick up his bills to accompany said shipment to continue the movement to its destination to the Fisher Body Company plant at Hamilton, Ohio, said loaded vehicle having been stopped by a state highway patrolman early Saturday morning, July 21, 1951, on the highways of Lorain county, Ohio;
“ (6) Permitted said James Sirbello to start driving a tractor-trailer unit under its certificate upon a trip originating in Cleveland, Ohio, and destined to Hamilton, Ohio, without first checking the driver's log of said James Sirbello to determine if he had — (A) the required time off duty as required by Section 614-97a, General Code of Ohio, and (B) the driver’s log book as required by the commission’s administrative order No. 126;
“(7) Permitted Joseph Hocevar, 795 East 88th street, Cleveland, Ohio, to operate a tractor-trailer unit as a trip lease operator under its P. U. C. O. certificate No. 449 a loaded motor vehicle upon the public streets and highways of the state of Ohio weighing in excess of the weights prescribed in Sections 7246, 7248 and 7248-1, General Code of Ohio;
“ (8) Dworldn, Inc., the citee herein, had full knowledge through its agent that said Joseph Hocevar was dispatched with a vehicle and cargo weighing in excess of the limits prescribed by the state of Ohio for reason this vehicle operator, after loading at the plant of the Fisher Body Company in Cleveland, Ohio, was required to move his loaded vehicle to the yard of Dworldn, Inc., to pick up his bills to accompany said shipment, to continue the movement to its destination to the Fisher Body Company plant at Hamilton, Ohio, said loaded velficle having been stopped by state *177 highway patrolmen early, Saturday morning, July 21, 1951, on the highways of Lorain county, Ohio; all in violation of the laws of the state of Ohio and the rules and regulations of this commission.”
Based on these specifications, the finding of the commission is in part as follows:
“2. That, early on the morning of July 21st, 1951, two tractor power units, bearing the P. U. C. O. markings and identification of citee carrier and each pulling-double bottom trailers which were overloaded with sheet steel greatly in excess of their respective load limits as prescribed by Ohio law, were stopped in Lorain county, Ohio, by the state highway patrol while moving said steel cargo, which originated in Cleveland, Ohio, toward Hamilton, Ohio, which was the point of destination. The evidence shows that the first of said power units so stopped carried New York state motor vehicle license plates but no Ohio motor vehicle plates were displayed thereon; and that no P. U. C. O. tax decal receipt was issued for or attached to the windshield of said power unit as required by law.
"* * *
”6. The evidence shows that sixteen (16) units of motor vehicle equipment, operating under said citee’s certificated authority, were loaded at shipper’s plant and that fourteen of said units passed through citee’s terminal for inspection and checking prior to moving toward Hamilton, Ohio, with their respective cargoes; and that two of said sixteen units, being the units driven by James Sirbello and Joseph Hocevar, and being the same equipment referred to and designated in the citation herein issued by and heard before this commission, were parked in the street near citee’s terminal on 33rd street and St. Clair, Cleveland, Ohio, on the night of the movements involved in said citation; and that Alva P. Mallory, an employee of citee, was on duty at said terminal, and made and issued certain *178 delivery receipts to James Sirbello and Joseph Hocevar for the steel cargo loaded on each of said trucking equipment operated by said James Sirbello and Joseph Hocevar.
“7* The evidence shows that, immediately following the issuance of said delivery receipts by Mallory to Sirbello and Hocevar, said drivers proceeded to move said equipment over certain public highways of Ohio with cargoes of steel having a gross weight of 73,990 pounds and 72,285 pounds respectively, which weights were approximately 50% in excess of the maximum load limits prescribed by law (Sections 7246, 7248 and 7248-1, O. G. C.) for such movements by said motor tandem equipment, to the points where said movements were stopped by members of the state highway patrol in Lorain county, Ohio, on July 21st, 1951, as hereinbefore set forth.
“8. The evidence further shows that said citee failed to check the driver’s log of said James Sirbello to determine if said driver had the required time off duty as required by Section 614-97a, General Code of Ohio, and as required by the commission’s administrative order No. 126.
“9. The evidence also shows that citee, Dworkin, Inc., through its employees and agents, knowingly permitted the affixing of its P. U. C. O. certificate No. 499 to the power units so operated by Sirbello and Hocevar and was chargeable with and responsible for the proper supervision and control of said equipment and drivers at all times during the movements hereinbefore set forth.
“10. That, from all of the evidence adduced, said citee failed and neglected to properly supervise and control said equipment and drivers in conformity with its duty as a certificated common carrier over the highways of Ohio as above set forth.
‘ ‘ 11. And, although the record shows there may have *179 been some extenuating circumstances in so far as citee’s responsibility for said vehicles was concerned, and although said citee has since adopted a loading procedure which is designed to prevent recurrence of similar violations, that said citee should be disciplined in a manner and to an extent commensurate with its failure and neglect to properly supervise and control the aforesaid operations under its said certificated authority.
“12. That this commission can not condone such extensive failure and neglect on the part of any common carrier as shown by the evidence adduced herein, and should invoke appropriate and reasonable discipline and forfeiture, based upon the facts disclosed in the instant case, in order to protect the public and regulate transportation by common and contract carriers by motor vehicle in accordance with the purpose and intent of the Motor Carrier Act of the laws of Ohio.
“13. That said certificate No. 499, heretofore issued to and now held by said citee, Dworkin, Inc., as a holder of record thereof, should be suspended for a period of thirty (30) days. However, it should be clearly understood that this suspension is based solely upon the peculiar facts and circumstances in this case, and that were it not for such facts this commission would feel constrained to take action of much greater severity including possible revocation of said certificate. ’ ’
The appellant contends that the commission committed numerous errors. The one urged most strenuously is that the commission does not “have the power to judge, prosecute and adjudicate appellant guilty of the crime of violating the motor vehicle weight laws of this state and upon the basis of such adjudication suspend appellant’s certificate as punishment.” Four of the eight alleged violations involve overloading.
*180 To substantiate its contention the appellant properly notes that the weight laws provide the procedure by which violators thereof are prosecuted and punished: that the appellant itself has not been found guilty of a violation thereof by any court; and that when there has been a conviction for such a violation, it is the duty of an officer of that court to report that fact to the commission. The appellant relies on the first paragraph of the syllabus in the case of New York Central Rd. Co. v. Public Utilities Commission, 123 Ohio St., 370, 175 N. E., 596, in which this court held:
“The jurisdiction of the Public Utilities Commission is conferred by statute, and its entire power with reference to the certification and regulation of motor transportation companies is thereby prescribed and defined, and it has no authority other than that thus vested in it.”
Section 614-87, General Code, reads in part as follows :
“The commission may at any time for a good cause and upon at least fifteen days ’ notice to the grantee of any certificate and an opportunity to be heard, revoke, alter or amend any certificate issued under the provisions of this chapter.”
In the contract under which the two trucks were operated, the second party (the hauler) agreed “at all times to comply with all laws of the state of Ohio, rules and regulations of the Public Utilities Commission of Ohio and any other lawfully constituted authorities.”
It is the view of the appellant that if a violation happens to be an act which constitutes a statutory offense for which a penalty is provided, the commission is without authority to take cognizance of the act until some court has rendered a finding of guilt and has forwarded a record of such conviction to the commission.
*181 One difficulty with this contention is that the pertinent statute does not so provide or even so intimate. The commission is authorized to take such action “for a good cause.” Of course courts are required to certify such convictions to the commission, and it may act thereon. But this does not imply that the commission must blind itself to competent evidence received from other sources concerning violations. In the instant case it is not disputed that each truck was loaded with a cargo weighing over 36 tons — 50 per cent, or 12 tons, in excess of the maximum permitted by law. In the face of these flagrant violations, was the commission powerless to act? Or is this precisely the sort of misconduct the General Assembly had in mind in using the broad language “for a good cause”? Destruction of the public highways would seem to come well within that term.
The appellant contends further that even if the commission had the authority to act, it could not suspend operations under the certificate.
As above quoted, Section 614-87, General Code, provides that the commission may “revoke, alter or amend” any certificate. If the commission had the broad authority to revoke, alter or amend, this clearly would seem to include the lesser authority to suspend operations.
The appellant insists also that if the commission had the authority to suspend operations, its action was arbitrary and unreasonable under the circumstances. However, a study of the record discloses substantial evidence to sustain each finding of the commission- •
Another present contention of the appellant is that the commission was motivated by passion and prejudice. A complete answer to this is found in the following conclusive statement by counsel for the appellant at the hearing before the commission:
“We have not anywhere in the record accused the *182 commission of being prejudiced or unfair or biased and I challenge any statement in the record to prove that. ’ ’
Another complaint is that the commission’s original citation order of July 31, 1951, did not bear the official seal of the commission. However, an examination of the record discloses that a second citation was issued on August 31, 1951, and the appellant does not contend that this did not bear the proper seal.
Finally, the appellant complains that none of the three commission members sat throughout the entire five-day hearing although there always was at least one present. Section 493, General Code, provides:
“A majority of the commission shall constitute a quorum for the transaction of any business, for the performance of any duty or for the exercise of any power of the commission. No vacancy in the commission shall impair the right of the remaining commissioners to exercise all the powers of the commission. The act of a majority of the commission, when in session as a board, shall be deemed to be the act of the commission; but any investigation, inquiry or hearing which the commission has power to undertake or to hold may be undertaken or held by or before any commissioner designated for the purpose by the commission, and every finding, order or decision made by a commissioner so designated, pursuant to such investigation, inquiry or hearing, approved and confirmed by the commission and ordered filed in its office, shall be and be deemed to be the finding, order or decision of the commission.”
While it is true that it would have been preferable to have all members hear all the evidence, each member did receive a complete transcript of the proceeding and concurred in the final order. It is apparent that the designation among the commission members from day to day was informal.
*183 The order of the commission is neither unreasonable nor unlawful and must be affirmed.

Order affirmed.

Taft, Matthias, Hart, Zimmerman and Stewart, JJ., concur.